## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

Case No. 20-cr-25 (JRT/ECW)

Plaintiff,

v.

**REPORT AND RECOMMENDATION**

Jimmy Leeartis Martin,

Defendant.

On February 5, 2020, Defendant Jimmy Leeartis Martin ("Martin" or "Defendant") was indicted on one count of Escape from Federal Custody in violation of 18 U.S.C. § 751(a). (Dkt. 9.) This matter is before the Court on Defendant's Motion to Suppress Electronic Surveillance Evidence (Dkt. 39) and Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures (Dkt. 40) (collectively, "Motions"). The Court held a hearing on November 16, 2020 by Zoom for Government. (Dkt. 48.) Jeff Paulsen, Assistant U.S. Attorney, appeared on behalf of Plaintiff the United States of America ("the Government") and Daniel Gerdts appeared on behalf of Martin, who consented to holding the hearing by Zoom for Government and was present at the hearing via Zoom for Government. (*Id.*) The Government offered three exhibits at the hearing, which the Court admitted. This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons stated below, the Court recommends that Defendant's Motion to Suppress Electronic Surveillance Evidence ("Electronic Surveillance Motion") and Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures ("Search and Seizure Motion") be denied.

## I.    FACTUAL BACKGROUND

The sole charge in this case is Escape from Federal Custody in violation of 18 U.S.C. § 751(a).  (Dkt. 9.)  The Criminal Complaint ("Complaint") alleges that on December 4, 2019, Martin was released from United States Penitentiary McCreary in Kentucky, where he was serving a sentence after pleading guilty in 2018 to being a felon in possession of a firearm.  (Dkt. 1-1 ¶¶ 2-3.)  According to the Complaint, Martin had become eligible to serve the rest of his 63-month sentence at the Volunteers of America Residential Reentry Center ("Reentry Center") in Minneapolis, Minnesota.  (*Id.*)  The Complaint further alleges that upon his release in Kentucky, he was to travel by overnight bus to Minneapolis and surrender to the custody of the Reentry Center on December 5, 2019.  (*Id.* ¶ 3.)  Martin did not so surrender on December 5, 2019, and a warrant for his arrest was issued.  (*Id.*; Dkt. 2.)

According to the Government, Martin has been implicated in a kidnapping, murder, and attempted murder that occurred on December 31, 2019 in Minneapolis and Maple Grove, Minnesota.  (Dkt. 43 at 3 & n.1; Gov't Ex. 3 at 2.)  Others have been charged in connection with those events, but "Martin has not yet been charged."  (Dkt. 43 at 3 & n.1.)

Martin was arrested on January 10, 2020, when law enforcement executed a search warrant (Gov't Ex. 3) at an apartment in Mounds View, Minnesota (Dkt. 1-1 ¶ 4). Officers also recovered a gun and several phones from the apartment. (Gov't Ex. 3 at 8; Dkt. 1-1 ¶ 4.) A grand jury indicted Martin on a single count, Escape from Federal Custody, on February 5, 2020. (Dkt. 9.) To date, he has not been charged in connection with the gun found at the Mounds View apartment. (Dkt. 43 at 3.)

The present Motions concern two warrants.[1] (Gov't Exs. 1, 3.) The first is a warrant to track a cell phone associated with a phone number ending in 4922 ("Tracking Warrant"). (Gov't Ex. 1.) In the affidavit supporting the application for the Tracking Warrant, Sergeant John Biederman of the Minneapolis Police Department stated that Martin had escaped from custody on December 5, 2019 and that there was a federal arrest warrant for him. (*Id.* at 3.) Sergeant Biederman further stated that within the last 72 hours, a call had been placed to Martin at the 4922 number by a confidential informant in the presence of law enforcement and that the call had been recorded. (*Id.* at 4.) According to Sergeant Biederman, the informant "provide[d] other information concerning MARTIN that was able to be verified by law enforcement." (*Id.*) Sergeant

---

[1]    The Government introduced three exhibits at the hearing: two tracking warrants for the cellular phone number ending in 4922 (Gov't Exs. 1, 2) and a search warrant for the apartment in Mounds View, Minnesota (Gov't Ex. 3). At the hearing, counsel addressed whether the two tracking warrants were duplicative of one another and whether one or both was executed, potentially rendering one irrelevant. The Court directed the Government to file a letter regarding this issue. (Dkt. 48.) The Government filed the letter on November 18, 2020 stating that it is the Government's position that the second warrant obtained, Exhibit 1, supersedes the first obtained, Exhibit 2, and so Exhibit 1 is the tracking warrant relevant to this proceeding. (Dkt. 50.) The Court therefore has not considered Exhibit 2 as part of this Report and Recommendation.

Biederman listened to the recording of the call and "believe[d] that the person on the call placed by the informant was made to MARTIN based on the voice on the phone." (*Id.*) Sergeant Biederman believed that Martin was in control of the 4922 number and requested a warrant for records from the phone company so that investigators could locate the phone and Martin. (*Id.*)

The second warrant is the search warrant for the apartment in Mounds View, Minnesota ("Apartment Warrant"). (Gov't Ex. 3.) In the application, Sergeant Biederman again stated that Martin had escaped from custody on December 5, 2019 and that there was a federal arrest warrant for him. (*Id.* at 2.) Sergeant Biederman stated that a call had been placed to the 4922 number by an informant, that the call had been recorded, and that the informant stated that they had called Martin at that number. (*Id.*) Sergeant Biederman said that he listened to the recorded call and believed that the person called was Martin. (*Id.*)

Sergeant Biederman's affidavit also described the December 31, 2019 kidnapping, murder, and attempted murder and stated: "This informant provided information concerning the December 31, 2019 incident that law enforcement could verify. This informant stated that MARTIN was a person who fired a firearm during the course of" the murder. (*Id.*) Sergeant Biederman's affidavit stated that the firearms had not been recovered in connection with the December 31, 2019 incident. (*Id.*)

The affidavit went on to represent that the cell phone assigned the 4922 number was electronically tracked pursuant to a court order obtained in Hennepin County, Minnesota on January 9, 2020 (*id.*), that is, the Tracking Warrant. The phone was

4

tracked to a four-plex building in Mounds View, Minnesota. (*Id.*) Sergeant Biederman stated that a police report regarding a January 4, 2020 domestic assault in another apartment in that building noted that an officer had spoken with K.D., who lived across the hall from the apartment where the domestic assault occurred. (*Id.*) Sergeant Biederman's affidavit stated that the apartment sought to be searched is across the hall from the apartment where the domestic assault occurred. (*Id.*) He further stated that Hennepin County Jail records showed that K.D. is Martin's sibling, who visited him in jail several times in 2012. (*Id.*) The Apartment Warrant is specific to K.D.'s apartment and authorized a search for Martin, firearms and items associated with the use and possession of firearms, and cell phones. (*Id.* at 5.)

Martin filed two Motions relating to the recorded call and Tracking and Apartment Warrants. (Dkts. 39, 40.) His Electronic Surveillance Motion asks the Court to "suppress all electronic surveillance evidence, together with any evidence derived therefrom, because the communications at issue were unlawfully intercepted or disclosed, and the orders of authorization or approval or disclosure, or the warrants, pursuant to which the communications or data were intercepted or disclosed are statutorily and constitutionally insufficient." (Dkt. 39 at 1 (citing 18 U.S.C. §§ 2518(10)(a), 2515, 2703).) His Search and Seizure Motion requested that the Court "suppress all evidence obtained in any search and seizure, and all evidence derived from such search and seizure, in violation of Defendant's rights under the Fourth Amendment to the United States Constitution." (Dkt. 40 at 1 (citing Fed. R. Crim. P. 12(b)(3)).) The Search and Seizure Motion challenged (1) "[t]he search of the apartment where Defendant was

staying when he was arrested on 10 January 2020," which "resulted in the search and seizure of his person as well as the seizure of a variety of evidence including a firearm, and his telephone," and (2) "[t]he search and seizure of location and call data related to the telephones used by Mr. Martin, including a phone using the number ending in 4922 and another phone using the number ending in 9949."  (*Id.* at 1-2.)

In its response to the Motions, the Government represented that it would not use the content of the informant's phone call in its case in chief at trial and asserted this mooted the Electronic Surveillance Motion.  (Dkt. 43 at 2 (discussing Dkt. 39).)  The Government also argued that the Search and Seizure Motion should be denied for several reasons, including because "everything was obtained pursuant to the execution of valid search warrants," there was "ample probable cause for the searches," and the executing officers relied on good faith on the existence of facially valid warrants.  (*Id.* at 3-4.)  The Government further argued that even if the Apartment Warrant was defective, the federal arrest warrant for Martin permitted law enforcement to enter the apartment to arrest him.  (*Id.* at 4.)  Finally, the Government contended that Martin could not "seriously be suggesting that his person be suppressed, particularly when there also was a valid and unchallenged federal warrant for his arrest that was extant at the same time," and that Martin had not established a possessory interest in the firearm that would permit him to challenge its seizure when the gun was seized from a third party's apartment.  (*Id.*)

The November 16 hearing clarified certain issues with respect to the Motions. Martin disputed that the Electronic Surveillance Motion was moot and stated that the phone call could not be used for any purpose if it was illegally obtained.  According to

Martin, the call was illegally obtained because there was no consent to law enforcement's recording of the call. Martin further argued that the phone call could not be relied on to establish probable cause for any of the warrants. The Government disagreed that the phone call was illegally obtained but agreed that it did factor into the search warrants. The Government reiterated that it would not be using the recording for its case in chief as the Indictment is currently framed—that is, solely an Escape from Custody charge.

The Government also made certain representations at the hearing about the informant's call to the 4922 number. Counsel represented that when the informant came in and met with law enforcement, the informant was asked if the informant knew where Martin was, the informant offered to call Martin, a call was placed to Martin at the 4922 number in the presence of law enforcement and recorded, and that it was "all consensual."

In a letter to the Court and Martin's counsel dated November 23, 2020, the Government provided the following additional information:[2]

> The informant was being interviewed by Minneapolis Police Department investigators in an interview room at the police department. While providing information about Martin including his cellular phone number, the informant decided on his/her own to place the call to Martin. The investigators did not ask the informant to do so and did not know he/she was going to do it. The informant made the decision on his/her own to put the call on speaker. Because the interview room is equipped with an audio recording device that had been activated at the start of the interview, the call was recorded by that device. The informant did not necessarily know that the interview room recording device was on.

---

[2]    The Government relied on this letter in its brief (Dkt. 53 at 4-6) and is directed to file this letter on CM/ECF.

The parties submitted additional briefing on the Motions after the hearing. (Dkts. 51, 53.) Martin later submitted a "Corrected" brief (Dkt. 56) in support of his Motions, which is the brief the Court has relied on for purposes of this Report and Recommendation.

## II.    DISCUSSION

### A.    Motion to Suppress Electronic Surveillance Evidence (Dkt. 39)

In his post-hearing brief in support of his Electronic Surveillance Motion, Martin seeks suppression of "the intercepted communication as well as any use of the recorded conversation and all evidentiary fruits derived therefrom." (Dkt. 56 at 3.) Martin argues that the phone call made by the informant to Martin was unlawfully obtained under 18 U.S.C. § 2515 and that the Government has "not [offered] any evidence to support the lawfulness of the intercepted communication," apparently because the Government did not call any witnesses on this issue at the hearing. (*See id.* at 2-3.) Martin additionally argues that the motion is not moot, despite the Government's representation that it would not use the content of the recording during its case in chief, "because the Government may not use the recorded communication or any fruit of the recorded conversation for any purpose at all – including for the purpose of establishing probable cause to obtain the warrants that are the subject of Defendant's other motion to suppress evidence." (*Id.* at 2.)

In its post-hearing brief, the Government reiterates its argument that Martin's challenges to the recorded call and search warrants are moot because "[t]he government already has said it will not be using the recorded call in its case in chief in this escape

8

prosecution." (Dkt. 53 at 3.) Relying in part on counsel's November 23 letter, the Government further argues that the recorded call was consensually monitored because one party—the informant—consented to let law enforcement officers monitor the call, and that the search warrants themselves provide a basis for the Court to conclude as much. (*Id.* at 4-6.) The Government also conditionally requests that the Court reopen the motions hearing if the Court concludes it needs further evidence as to consent, stating that Martin represented before the hearing that the Motions required only a "four-corners" review (*id.* at 7 (citing Dkt. 40 at 2)) and that the Government would have presented witnesses had it known Martin was claiming the recorded call tainted the search warrants (*id.*).

In view of the Government's representation that it will not use the recording during its case in chief as to the escape charge, the Court recommends denial of the Electronic Surveillance Motion as moot insofar as it seeks suppression of the recording itself. *See United States v. Morris*, No. 17-CR-107 (DWF/TNL), 2018 WL 2193109, at *9 (D. Minn. May 14, 2018) ("Accordingly, Defendant's motion is denied as moot given the Government's representations that it does not intend to introduce evidence from the December 14, 2016 search and seizure in its case-in-chief."); *United States v. McConnell*, No. 13-CR-273 (SRN/FLN), 2017 WL 396538, at *4 (D. Minn. Jan. 30, 2017) (agreeing with parties that objections to evidence derived from searches of electronic devices were moot in view of the Government's representation that it would not use the evidence during its case-in-chief); *United States v. Oliver*, No. CR 15-164 (DSD/BRT), 2015 WL 13731345, at *11 (D. Minn. Oct. 13, 2015) ("So far as the record shows, the only items

seized from Oliver's person were cash, a driver's license, and credit cards, none of which the government intends to introduce in its case-in-chief at trial. Oliver's request to suppress evidence seized pursuant to his arrest is therefore moot, obviating any need for this Court to consider the legality of his arrest.") (citation and footnote omitted), *R.&R. adopted*, 2015 WL 7432334 (D. Minn. Nov. 23, 2015); *see also United States v. Armstead*, No. CR11-0143, 2011 WL 6204598, at *2 (N.D. Iowa Dec. 13, 2011) ("As a practical matter, it is unclear whether there is a significant difference between granting the motion to suppress or denying the motion as moot (based on the Government's promise not to offer the evidence during its case in chief). Under either alternative, the Government is precluded from offering into evidence during its case in chief the items seized during the warrantless search. When the Government agrees not to offer evidence which is the subject of the motion to suppress, however, it would appear that the common practice is to deny the motion as moot."), *R.&R. adopted*, 2011 WL 6842511 (N.D. Iowa Dec. 29, 2011); *United States v. Mitchell*, No. 08-CR-46-LRR, 2009 WL 36605, at *2 (N.D. Iowa Jan. 5, 2009) (collecting cases and noting that "when the government agrees not to offer evidence which is the subject of the motion to suppress, the common practice is to deny the motion as moot").

The Court acknowledges Martin's concern that the Government has only represented that it will not use the recording in its case in chief, while Martin seeks to suppress its use for **any** purpose, including impeachment and to support the Tracking and Apartment Warrants. (*See* Dkt. 56 at 5 (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)).) As to whether the Government can use the recording

for purposes of impeachment at trial, the Court believes the better course is to defer that decision until if and when the issue actually arises. This is for two reasons. First, it appears unlikely that the Government will need to use the contents of the recorded call to prove its escape case at trial, even for purposes of impeachment. Second, it is unclear that the Government was sufficiently on notice as to Martin's challenges regarding the recording before the hearing that it should have known to call a witness to testify as to the circumstances of the recording. It does not appear that counsel sufficiently conferred about the recording to "clarify and narrow the issues in dispute" before the hearing. *See* D. Minn. LR 12.1(b). Rather than decide the issue of consent on a potentially incomplete record or reopen the hearing based on the minimal possibility that the recording will be used for impeachment, the Court recommends denial of the Electronic Surveillance Motion as moot as to the recording itself—but without prejudice to Martin's ability to raise this issue should the Government later seek to use the recording at trial.

Martin also objects to the use of the recording to support probable cause for the Tracking and Apartment Warrants on the grounds that the recording was obtained without consent.[3] (Dkt. 56 at 2.) Relying on *United States v. Corona-Chavez*, 328 F.3d 974, 979 (8th Cir. 2003), the Government argues that the informant's consent is implied because the informant called Martin voluntarily in the presence of law enforcement and

---

[3] The Government argues that Martin's challenge to the warrants is moot because it does not intend to use the recording in its case in chief for the escape charge. (Dkt. 53 at 3.) But this does not resolve whether the recording can be relied on for purposes of establishing probable cause for the Tracking and Apartment Warrants or whether the fruit of the poisonous tree doctrine set forth in *Silverthorne Lumber Co.*, 251 U.S. at 392, prohibits its use.

placed the call on speakerphone in a police interview room.  (Dkt. 53 at 6.)  In *Corona-Chavez*, a drug courier had consented to cooperate in a controlled delivery and participated "in the elaborate preparations for that delivery, such as allowing herself to be wired for sound, giving the officers the keys to the Excursion, and consenting to the installation of videotaping equipment in the hotel room, all of which happened roughly contemporaneously with the telephone interception."  328 F.3d at 979.  The case agent testified that the courier "was required to place a mechanical device into her ear in order to record the conversation," leaving "little doubt that she was aware the conversation was being intercepted," and that the courier "listened to the tape after the call was over" with the agent.  *Id.*  There is no such testimony in this case.  Moreover, the Eighth Circuit distinguished the *Corona-Chavez* circumstances from another case, *United States v. Gomez*, 900 F.2d 43, 44 (5th Cir. 1990), in which there was "no evidence of consent." *Corona-Chavez*, 328 F.3d at 979.

In *Gomez*, the Fifth Circuit found the prosecution had not met its burden to show consent when a cooperator (Duran) placed a call to Gomez after Duran's arrest and:

> At trial, the prosecution asked one of the officers present while Duran placed the call to Gomez whether Duran had consented to the tape recording of the call.  After defense counsel objected to that question on hearsay grounds, the prosecution withdrew the question and never attempted to ask it again.

900 F.2d at 44.  While "[c]onsent to interception of a telephone call may be inferred from knowledge that the call is being monitored," *id.*, the *Gomez* court found that the recording's admission was reversible error because "there is nothing in the record directly

addressing the question of [the cooperator's] knowledge of or consent to the agents' recording the call," *id.* at 44-45.

Here, consent was not fully raised as a basis for suppressing the Tracking and Apartment Warrants until the November 16 hearing. Consequently, there is no testimony as to consent or knowledge of monitoring, and the Court is reluctant to decide consent based on solely on the affidavits. For the reasons explained in Section II.B, the Court recommends against suppression of the warrants because they are supported by probable cause even if the Court does not consider the recording's content or Sergeant Biederman's recognition of Martin's voice based on the recording. The Court therefore need not reach the issue of consent, and recommends denial of the remainder of the Electronic Surveillance Motion as moot.[4]

**B.    Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures (Dkt. 40)**

Martin's Search and Seizure Motion seeks suppression of the results of the Tracking Warrant and the Apartment Warrant. (Dkt. 56 at 4.) The Court addresses each warrant in turn below.

**1.    Tracking Warrant**

The crux of Martin's argument as to the Tracking Warrant is that because the recording was unlawful, the recording and Sergeant Biederman's recognition of Martin's voice from the recording cannot support a finding of probable cause, leaving none to

---

[4]    If the Court were to reach the issue of consent, it would reopen the hearing to permit testimony on this point.

support the Tracking Warrant.  (Dkt. 56 at 5.)  According to Martin, the only facts in the affidavit demonstrating a nexus between the 4922 number and Martin were "1) a confidential informant made a phone call to the telephone number at issue, spoke to someone on the other end, and the call was recorded; and 2) Sergeant Biederman listened to the recording of the call and believes the call was made to Martin based on the voice." (*Id.*)  Martin argues that "the *only* evidence put forth in the affidavit to establish the *identity* of the person who apparently answered the call was Sergeant Biederman's assertion that he recognized the voice as Martin's after listening to the recording of the call."  (*Id.*)  The Government responds that there was probable cause for the Tracking Warrant even if the call had not been recorded and Sergeant Biederman had not listened to the recording.  (Dkt. 53 at 8.)

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  *See Illinois v. Gates*, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238).  The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.  "Probable cause is a fluid concept that focuses on 'the factual

and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). In reviewing the decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. *See Gates*, 462 U.S. at 238-39 (citation omitted); *see also United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) (citations omitted) ("Our duty as a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge."). "When the issuing judge relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (cleaned up).

Here, if Martin were correct that the recording was unlawfully obtained, the question would be whether the remaining information in the affidavit supports a finding of probable cause as to the Tracking Warrant. *See United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004) ("The sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information."). "To establish probable cause for the issuance of a search warrant, 'there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue.'" *United States v. Boswell*, No. 19CR132ADMLIB1, 2019 WL 7580108, at *3 (D. Minn. Aug. 29, 2019) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir.

15

2000)), *R.&R. adopted*, No. CR 19-132 ADM/LIB, 2019 WL 5061350 (D. Minn. Oct. 9, 2019).  In this escape case, the question is whether a nexus between the cell phone associated with the 4922 number and the criminal activity (Martin's alleged absconding) existed.  *See id.* (deciding whether "the issuing state court judge had a substantial basis to conclude that probable cause and a nexus between the cell phone and criminal activity (i.e., absconding from probation) existed").

If the Court excised the second full paragraph on page 4 of the affidavit supporting the Tracking Warrant (Gov't Ex. 1 at 4), which relates to Sergeant Biederman's recognition of Martin's voice, the affidavit would state in relevant part:

> Jimmy MARTIN [XX/XX/1988] escaped from custody on December 5, 2019.  He has a federal arrest warrant (warrant number 204112050291A).

> Within the last 72 hours, a phone call was placed to Jimmy MARTIN at XXX-XXX-4922 in the presence of law enforcement and recorded.  This call was placed by a confidential informant who was able to provide other information concerning MARTIN that was able to be verified by law enforcement.

> Your affiant believes Jimmy MARTIN is in control of XXX-XXX-4922.

(*Id.* at 3-4.)  The Court considers whether those remaining statements in the affidavit establish probable cause connecting Martin to the 4922 number, keeping in mind that "[a] court must review the sufficiency of a search-warrant affidavit using a 'common sense' and not a 'hypertechnical' approach."  *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007).

Martin argues that only two facts support the required nexus, one of which is that "a confidential informant made a phone call to the telephone number at issue, spoke to

someone on the other end, and the call was recorded," and the other of which is Sergeant

Biederman's recognition of Martin's voice based on the recording.  (*See* Dkt. 56 at 5.)

According to Martin, this means the only evidence establishing the identity of the person

who answered the call is Sergeant Biederman's recognition of his voice.  (*Id.*)

This argument is inconsistent with the language of the affidavit.  Specifically, the

affidavit states that "a phone call was placed **to** Jimmy MARTIN **at** XXX-XXX-4922."

(Gov't Ex. 1 at 4 (emphases added).)  Martin's characterization, which suggests that the

informant had no expectation of who would or no knowledge of who did answer the 4922

number, ignores this linking language.  Common sense indicates that one would not

normally place a call to a specific person at a specific phone number without some

expectation that the person would answer the phone linked to the number.  It is true that

the affidavit does not expressly state the informant actually spoke with Martin; but the

Court declines to adopt Martin's cramped reading of this language.  *See Walden v.*

*Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("Applications and affidavits should be read

with common sense and not in a grudging, hyper technical fashion.").  Nothing in the

affidavit suggests that the informant did not speak to Martin during this call or did not

know that it was Martin on the phone.

Martin also contends that nothing in the affidavit suggests the confidential

informant had any previous relationship with Martin or "even knew his name."  (Dkt. 56

at 6.)  On the contrary, the affidavit states that the informant was able to provide "**other**

**information** concerning MARTIN that was able to be verified by law enforcement."

(Gov't Ex. 1 at 4 (emphasis added).)  This "other information" language suggests that the

informant provided either the 4922 number or confirmation that the informant spoke with Martin during the call (or both) in addition to the "other information."[5]  Moreover, this statement also supports the informant's reliability.  "When an affidavit in support of a search warrant is based upon information from an informant, the informant's 'reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause.'"  *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).  "The key inquiry in such cases is whether the information is reliable."  *Id.*  "Such reliability can be established through independent corroboration or the informant's track record of providing trustworthy information."  *Id.*  Here, the affidavit indicates law enforcement independently corroborated the "other information" provided by the informant.

The affidavit certainly could have identified which of the informant's "other information" was verified, but the lack of detail does not require the conclusion that the informant was not reliable.  *See United States v. Brown*, 499 F.3d 817, 821 (8th Cir. 2007) ("Brown complains that the affidavit does not elaborate on the officer's basis for describing the CI as reliable.  While we agree that this would have been preferable, such elaboration is not essential for the affidavit to support a finding of probable cause.").  Moreover, the fact that the informant made the call in the presence of law enforcement

---

[5]    The Government's November 23 letter represents that the informant provided the 4922 number as well as other information about Martin, but this is not expressly stated in the affidavit.

buttresses the informant's reliability. *See Faulkner*, 826 F.3d at 1145 ("[B]olstering our conclusion is the fact that the CRI provided information to the officer in person and importantly, that the officer was able to independently corroborate the details about ownership of the two cars and Faulkner's presence at the two residences.") (citation omitted).

In sum, while it is true that the affidavit does not expressly state the informant spoke with Martin or who provided the 4922 number, "[i]n determining whether probable cause exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning." *United States v. Tyler*, 238 F.3d 1036, 1038 (8th Cir. 2001). When considering all of the facts, the Court finds that a reasonable person could conclude that the 4922 number was linked to Martin based on the affidavit notwithstanding the excision of the paragraph describing Sergeant Biederman's recognition of Martin's voice from the recording, and that sufficient probable cause supports issuance of the Tracking Warrant. Further, Sergeant Biederman was entitled to rely on information provided by the law enforcement officers who were present during the informant's call when forming his belief that Martin was "in control of" the 4922 number. *See Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (relying on "the settled principle that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable"). To the extent Sergeant Biederman's belief was based on the information about the call to the 4922 number provided by law enforcement (rather than listening to the recording), it

further supports probable cause.  For all these reasons, the Court recommends denial of
the Search and Seizure Motion as to the Tracking Warrant.

In the alternative, the Court considers whether the good-faith exception in *United
States v. Leon*, 468 U.S. 897 (1984), applies to the Tracking Warrant.  Under *Leon*,
"'evidence seized pursuant to a search warrant issued by a [judge] that is later determined
to be invalid[] will not be suppressed if the executing officer's reliance upon the warrant
was objectively reasonable.'"  *United States v. Houston*, 665 F.3d 991, 995 (8th Cir.
2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)).  In *Leon*, the
court stated that "'searches pursuant to a warrant will rarely require any deep inquiry into
reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that
a law enforcement officer has 'acted in good faith in conducting the search.'"  468 U.S. at
922 (citations omitted).  However, the *Leon* court noted that there are certain instances
when "the purpose of the exclusionary rule—deterring police misconduct—will not be
served by suppressing illegally seized evidence."  *United States v. Martin*, 833 F.2d 752,
755 (8th Cir. 1987); *Leon*, 468 U.S. at 922-23.  "When a police officer acts in an
objectively reasonable manner in reliance on a subsequently invalidated search warrant,
there is no rational reason for suppressing the fruits of the search."  *Martin*, 833 F.2d at
755.

The Court's "good-faith inquiry is confined to the objectively ascertainable
question whether a reasonably well trained officer would have known that the search was
illegal despite the magistrate's authorization."  *Leon*, 468 U.S. at 922 n.23.  In this regard,

evidence obtained as a result of an unconstitutional search should be suppressed under

the following circumstances:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
>
> (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;
>
> (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*"; and
>
> (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 431).  Relevant factors include,

among other things, whether the warrant was issued by an unbiased judge, whether the

officer who requested the warrant was the same officer who executed the warrant,

whether there was probable cause for the search, whether the application was attached to

the warrant, and whether, in the context of the warrant, the officer had a reasonable belief

the warrant was limited to the seizure of more particular items.  *See, e.g.*, *United States v.*

*Henderson*, 416 F.3d 686, 695 (8th Cir. 2005); *United States v. Curry*, 911 F.2d 72, 78

(8th Cir. 1990).

The Government argues that the *Leon* exception applies.  (Dkt. 53 at 11-12.)

Martin argues "[o]n the face of the affidavit, probable cause is so woefully lacking that

no reasonable officer could rely on it in good faith, especially a police officer who knows

that the only evidence in support of the required probable cause is the presumptively

*unlawful* recording of a telephone call."  (Dkt. 56 at 6.)  Even if the Court accepted the

argument that the executing officer thought the recording was unlawful, the recording is not the "only evidence" in the affidavit that supports probable cause. Rather, the supporting affidavit sets forth sufficient indicia connecting the 4922 number to Martin such that a law enforcement officer could reasonably believe the Tracking Warrant was supported by probable cause, including the fact that a confidential informant placed a call to Martin at the 4922 number in the presence of law enforcement, that the call occurred within the last 72 hours, that the call was recorded (even without considering the content of the recording), and that the informant's other information about Martin was verified by law enforcement. Martin has not identified any reason other than the alleged lack of consent why the Tracking Warrant is so facially deficient that no reasonable officer could rely on it. Finally, there is no suggestion (and Martin has not argued) that the affidavit was deliberately or recklessly false, that the affidavit was not attached to the warrant, or that the issuing judge wholly abandoned his judicial role in issuing the warrant. The *Leon* exception provides another ground for denial of the Search and Seizure Motion as to the Tracking Warrant.

### 2.    Apartment Warrant

As to the Apartment Warrant, Martin argues that the warrant is not supported by probable cause because "[t]he entire basis for believing that Defendant Martin would be present at the apartment is contingent on the location data that was unlawfully obtained through the other defective warrant," and "[w]ithout the location data, there would be no probable cause to search the apartment." (Dkt. 56 at 6.) Martin additionally argues that even if the location data were not fruit of the poisonous tree, the affidavit is insufficient

to support a finding of probable cause to search the apartment, since the information from the informant was not enough to provide probable cause. (*Id.* at 7-10.)

The Government argues that Martin has not established that his Fourth Amendment rights were violated by the apartment search because Martin has not articulated what he is trying to suppress, his person cannot be suppressed, and he cannot claim Fourth Amendment rights to the gun because he has not claimed the gun belongs to him and the gun was seized from someone else's apartment. (Dkt. 53 at 3-4.) The Government also argues that the Apartment Warrant would be valid even without reference to the recording because the statements of the informant in the affidavits, which the Government contends are reliable, sufficiently establish probable cause. (*Id.* at 8-11.)

The Court first considers whether the evidence obtained pursuant to the Apartment Warrant should be suppressed as fruit of the poisonous tree. For the reasons stated in Section II.B.1, the Court concludes that adequate probable cause supports the Tracking Warrant even if the paragraph about Sergeant Biederman's recognition of Martin's voice were excised. Consequently, the Court rejects Martin's argument that the location data for the 4922 number was unlawfully obtained.

The Court next considers Martin's argument that, even if the location data is not the fruit of the poisonous tree, the affidavit in support of the Apartment Warrant does not support a finding of probable cause to search the apartment. (Dkt. 56 at 7.) The Court therefore considers whether the affidavit—even if the Court excises the statement that Sergeant Biederman listened to the recording of the informant's call to Martin and believed the person called was Martin based on the voice and voice pattern (Gov't Ex. 3

23

at 2)—establishes probable cause to search the apartment for Martin, firearms and items

associated with the use and possession of firearms, and cell phones. If that information is

removed, the affidavit would provide in relevant part:

> In December of 2019, Jimmy Leeartis MARTIN ([]) escaped from custody. A federal arrest warrant was issued for MARTIN. The warrant number for this is 204112050291A.

> \* \* \*

> On December 31, 2019, MB was shot and murdered in Minneapolis, Minnesota after she was abducted in the city of Maple Grove, Minnesota. Law enforcement discovered duct tape on MB. Finger prints of CB was found on the duct tape. CB has been taken into custody and is currently charged in Hennepin County with the murder of MB.

> Also on December 31, 2019, a male, JM was shot in north Minneapolis with a .45 caliber firearm. JM is the boyfriend of MB.

> Firearms have not been recovered in relation to these cases.

> Within the last 72 hours, a call was placed by an informant to 773-968-4922. This call was recorded. The informant stated that they had called MARTIN at this number.

> This informant provided information concerning the December 31, 2019 incident that law enforcement could verify. This informant stated that MARTIN was a person who fired a firearm during the course of CB's murder.

> A court order was obtained from Hennepin County Judge Phil Carrithers on January 9, 2020, permitting the electronic tracking of the cell phone assigned number XXX-XXX-4922. This cell phone was tracked to the area of XXX Quincy Street in Mounds View (Ramsey County), Minnesota. This building is a four-plex.

> On, January 4, 2020, a domestic assault occurred in the building in apartment four. [K.D.] (XX/XX/1991) was listed in the report. In the body of the report an officer noted that they spoke with [K.D.] who lived across the hall from apartment four.
> Apartment three is across the hall from unit four in XXX Quincy Street.

> In Hennepin County Jail records, where MARTIN has been an in-mate, show that [K.D.] is a sibling of MARTIN.  In 2012, she visited him in Hennepin County Jail at least three times.
>
> Law enforcement would like to enter the address and search for [K.D.] and the items listed on page one of this application.

(Gov't Ex. 3 at 2-3.)

Martin takes issue with the fact that the affidavit provides "[t]he informant stated that MARTIN was a person who fired a firearm during the course of CB's murder" (rather than MB's murder) because CB was in custody on suspicion of MB's murder, not a murder victim himself, describing this statement as "obviously false."  (Dkt. 56 at 8.)  This is not well-taken.  The affidavit as a whole establishes that it was MB who was the murder victim, not CB, and that CB was "taken into custody and is currently charged in Hennepin County with the murder of MB."  (Gov't Ex. 3 at 2.)  The probable cause determination is based on common sense.  *See Grant*, 490 F.3d at 632.  Common sense indicates that the use of "CB" instead of "MB" in this statement was a typographical error and that the informant stated that Martin was a person who fired a firearm during the course of MB's (the victim's) murder, not CB's, who is the person the affidavit said was charged with and in custody for the murder.  This error does not detract from the probable cause established by the affidavit.  *See United States v. Allen*, 667 F. App'x 568, 569 (8th Cir. 2016), *as corrected* (July 12, 2016) ("In addition, a date error in the warrant affidavit was an inconsequential typographical error, and the file-stamp date of the warrant (a day after its actual execution) did not compromise the probable-cause finding.") (citing *Solomon*, 432 F.3d at 829).  The fact that Martin did not bring a motion

pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), regarding this statement suggests that Martin realizes this was a typographical error and nothing more.

Martin also argues that there was no probable cause to believe he would be found in the apartment and the affidavit provides no reason to believe the "unverified allegation [by the informant] that Martin fired a firearm during the course of any crime, or that evidence of such conduct would be found in the apartment of Martin's relative." (Dkt. 56 at 7-8.) For the following reasons, the Court finds the affidavit, even when Sergeant Biederman's voice recognition is excised, provides sufficient probable cause to believe Martin, firearms and items associated with firearms, and cellular phones would be found at the apartment in question.

The affidavit stated that the informant had placed a call to the 4922 number that was the subject of the Tracking Warrant within the last 72 hours, that the call was recorded, that the informant stated he had called Martin at the 4922 number, that location data obtained from a Tracking Warrant on the phone assigned the 4922 number had located the phone in the four-plex building, and that Martin's sister, who had visited him in prison, lived in the apartment to be searched. (Gov't Ex. 3 at 2.) It further stated that, according to the informant, Martin had fired a firearm during the course of the December 31, 2019 incident and that law enforcement had not recovered the firearms associated with that incident. (*Id.*) The informant's reliability is supported by the fact that the affidavit stated that the informant made the call to Martin at the 4922 number in the presence of law enforcement, *see Faulkner*, 826 F.3d at 1145, and execution of the Tracking Warrant resulted in the 4922 phone number being tracked to the same building

as Martin's sibling, *see United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005)

("An informant's tip may be sufficiently reliable to support a probable-cause

determination . . . if the tip is 'corroborated by independent evidence.'") (quoting *United*

*States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).  While Martin suggests the

informant's reliability was diminished because the informant did not know Martin was in

that building (Dkt. 56 at 9), the affidavit also stated that the "informant provided

information concerning the December 31, 2019 incident that law enforcement could

verify" (Gov't Ex. 3 at 2).  This verification further supports the informant's reliability,

*see Faulkner*, 826 F.3d at 1145, and the results of the Tracking Warrant and information

about K.D. provided a basis for believing Martin would be found in the identified

apartment.

Martin, however, argues that the lack of probable cause is summed up by Sergeant

Biederman's concluding statement: "Law enforcement would like to enter the address

and search for [K.D.] and the items listed on page one of this application."  (Dkt. 56 at 9.)

Martin asserts that there is no reason for law enforcement to search for K.D. or to believe

she would be hiding evidence of a crime in her apartment.  (*Id.* at 9-10.)  The statement

that law enforcement would like to "enter the address and search for [K.D.]" (instead of

Martin) at the conclusion of the affidavit, after Sergeant Biederman had just finished

describing K.D.'s relationship with Martin, is an obvious typographical error that does

not render the warrant defective, particularly when the first page of the application seeks

a warrant to search for <u>Martin</u> and the affidavit states that an arrest warrant issued for

<u>Martin</u> and is focused on <u>Martin's</u> conduct.  *See Allen*, 667 F. App'x at 569.

Given the totality of the circumstances, even if Sergeant Biederman's statement regarding the recorded call is excised, a reasonable person could believe there was a fair probability that Martin, evidence of a crime (the firearm allegedly fired by Martin), and cell phones (including the phone associated with the 4922 number) would be found in the apartment to be searched pursuant to the Apartment Warrant.

Moreover, the Court agrees with the Government that the *Leon* exception applies to the Apartment Warrant. (*See* Dkt. 53 at 11-12.) The supporting affidavit sets forth sufficient indicia connecting the 4922 number to Martin (even after removal of Sergeant Biederman's statement about the recording), the 4922 number to the identified apartment, Martin to the identified apartment, and Martin to the December 31, 2019 incident such that a law enforcement officer could reasonably believe the Apartment Warrant was supported by probable cause, namely that:

- a confidential informant called the 4922 number to speak with Martin in the presence of law enforcement;

- the call occurred within the last 72 hours;

- the informant stated that they had called Martin at the 4922 number;

- a judge had issued a warrant to track the 4922 number and the resulting location information resolved to the four-plex building;

- the informant stated that Martin was a person who fired a firearm during the course of the December 19, 2019 incident;

- Martin's sibling (who had visited him in prison) lived in the apartment to be searched;

- law enforcement had not found the firearms associated with the December 31, 2019 incident; and

- law enforcement had verified other information provided by the informant about the December 31, 2019 incident.

Again, Martin has not argued that the affidavit was deliberately or recklessly false, that the affidavit was not attached to the warrant, or that the issuing judge wholly abandoned her judicial role in issuing the warrant. The Court therefore recommends denial of the Search and Seizure Motion as to the Apartment Warrant because it falls within the *Leon* exception.

### 3.    Alternative Arguments

The Government made certain alternative arguments regarding the search of the apartment. (*See* Dkt. 43 at 4; Dkt. 53 at 3-4.) First, it argues that suppression of the Tracking and Apartment Warrants would not invalidate Martin's arrest pursuant to the arrest warrant or "somehow lead to the 'suppression' of his person." (Dkt. 53 at 3.) Second, the Government argues that the only item of evidentiary relevance seized is a firearm found under a mattress in a bedroom, but Martin has not shown or claimed the firearm belonged to him and cannot claim his Fourth Amendment rights were violated "when police seized the gun from someone else's apartment." (*Id.* at 3-4.)

The Court first considers whether Martin has standing to challenge the seizure of the firearm found in the apartment. "Fourth Amendment rights are personal and cannot be asserted vicariously." *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000). "A defendant who 'fails to prove a sufficiently close connection to the relevant places or objects searched . . . has no standing to claim that they were searched or seized illegally.'" *Id.* (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)). "A

defendant moving to suppress evidence has the burden of showing a legitimate expectation of privacy in the area searched." *Id.* "Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Id.* (quoting *Gomez*, 16 F.3d at 256).

Here, Martin describes himself as "staying" and "Staying as a Guest" at the apartment in his pre-hearing and post-hearing briefs. (Dkt. 40 at 1; Dkt. 56 at 6.) An overnight guest may claim the protection of the Fourth Amendment. *Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (finding overnight guest "can claim the protection of the Fourth Amendment" because "[t]o hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share"). Martin, however, offered no evidence of his guest status. Moreover, he has not argued or offered evidence that the firearm was his, nor has he argued or offered evidence that the firearm was found in a location where he had a legitimate expectation of privacy. The Government states the firearm was found under a mattress in a bedroom where Martin spent the night. (Dkt. 43 at 3.) But in the absence of any evidence establishing where the firearm was found or as to any of the factors relevant to the determination of standing (even after the Government challenged Martin's standing in its pre-hearing brief (*id.* at 4)), the Court finds that that Martin has not met his burden to show he had an expectation of privacy in the firearm or the location it was found, *see*

*United States v. Douglas*, 744 F.3d 1065, 1071-72 (8th Cir. 2014) ("Douglas did not adduce any evidence that he had any interest—ownership, possessory, or otherwise—in the plastic bag in which the shotgun was found. To the contrary, rather than present evidence to establish a personal connection to the areas searched and the item seized, Douglas consistently disavowed any ownership or possessory interest in the bag or the shotgun, even going so far as to deny any knowledge of them.") (footnote omitted). Accordingly, to the extent Martin seeks suppression of the firearm, the Court recommends denial of the Search and Seizure Motion for lack of standing.

Finally, the Court turns to the question of Martin's person. In the Search and Seizure Motion, Martin referred to "the search and seizure of his person" (Dkt. 40 at 1) but did not expand on this issue in his post-hearing brief (*see* Dkt. 56). A federal warrant for Martin's arrest issued on January 13, 2020 (Dkt. 2), before the search of the apartment, and Martin has not challenged that arrest warrant. As the Eighth Circuit explained in *United States v. Glover*, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 746 F.3d 369, 373 (8th Cir. 2014) (quoting *Payton v. New York*, 445 U.S. 573, 603 (1980)). "If officers are unsure if the subject of the arrest warrant resides in the home, our court allows 'police entry if the arresting officers executing the arrest warrant at [a] third person's home have a *reasonable belief* that the suspect resides at the place to be entered and have reason to believe that the suspect is present at the time the warrant is executed.'" *Id.* (quoting *United States v. Powell*, 379 F.3d 520, 523 (8th Cir. 2004)).

The Government asserted in its pre-hearing brief that Martin "cannot seriously be suggesting that his person be suppressed, particularly when there was also a valid and unchallenged federal warrant for his arrest that was extant" at the time the Search and Seizure Warrant was executed. (Dkt. 43 at 4.) Martin did not respond to this argument in his post-hearing brief, nor did he explain why the *Glover* requirements are not met. Martin has not sought release or explained how his arrest pursuant to the arrest warrant would be affected (if at all) by his fruit of the poisonous tree argument. Accordingly, the Court understands Martin does not seek suppression of his person or release as part of his suppression motions, and does not address this point further.

## III.    <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1.    Defendant's Motion to Suppress Electronic Surveillance Evidence (Dkt. 39) be **DENIED AS MOOT**, without prejudice to Defendant's ability to renew the motion should the Government seek to introduce the recording of the informant's call to Martin at the 4922 number at trial; and

2.    Defendant's Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures (Dkt. 40) be **DENIED**.


DATED: January 4, 2021                    *s/Elizabeth Cowan Wright*
                                          ELIZABETH COWAN WRIGHT
                                          United States Magistrate Judge

## **<u>NOTICE</u>**

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).