UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JIMMY LEEARTIS MARTIN<br><br>        Defendant. | Criminal No. 20-25 (JRT/ECW)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION AS MODIFIED** |

Jeffrey S. Paulsen, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Daniel L. Gerdts, 331 Second Avenue South, Suite 705, Minneapolis, MN 55401, for defendant.

On January 4, 2021, Magistrate Judge Elizabeth Cowan Wright issued a Report and Recommendation ("R&R"), recommending that Defendant Jimmy Leeartis Martin's Motion to Suppress Electronic Surveillance Evidence be denied as moot without prejudice, and that his Motion to Suppress Search and Seizure Evidence be denied. Defendant objects to both recommendations. Because the United States does not intend to use the electronic surveillance evidence in its case in chief, and because the Court finds that the supporting affidavits for the two search warrants demonstrate sufficient probable cause or, alternatively, demonstrate sufficient indicia of probable cause for the good-faith exception to the exclusionary rule to apply, the Court will overrule Martin's objections, adopt the R&R as modified below, and deny the Motions.

-1-

## BACKGROUND

**I.  FACTUAL BACKGROUND**

On January 22, 2018, Martin was sentenced to 63 months for being a felon in possession of a firearm.  (Aff. of John Biederman ("Biederman Aff.") at ¶ 2, Jan. 13, 2020, Docket No. 1-1.)  After becoming eligible to serve the remaining portion of his sentence at the Volunteers of America Residential Reentry Center in Minneapolis, Minnesota, Martin was released from a federal penitentiary with instructions to surrender to the custody of the Volunteers of America on December 5, 2019.  (*Id.* ¶ 3.)   He allegedly did not, and a federal warrant for his arrest was issued.  (*Id.*)

In early January 2020, an informant was interviewed by Minneapolis Police investigators.  (*See* Letter at 1, Jan. 5, 2021, Docket No. 60.)  During the interview, the informant decided, on their own and without the investigators knowing in advance, to place a call to Martin, which was put on speakerphone so that investigators could hear.  (*See id.*)  Because the interview room was equipped with an audio recording device, the call was recorded.  (*Id.*)  The informant did not necessarily know that the recording device was on during the call.  (*Id.*).

On January 10, 2020, after obtaining a search warrant to track the cell phone that the informant called (the "tracking warrant"), law enforcement officers located Martin in a four-plex in Mounds View, Minnesota, where Martin's sibling maintained a residence.

(Ex. 1 at 2–3.)[1] Law enforcement agents then arrested Martin and, pursuant to another warrant (the "search warrant"), searched the residence, thereby recovering a loaded firearm and several phones. (Biederman Aff. ¶ 4; Ex. 3 at 8.)[2] A grand jury indicted Martin for a single count, escaping from federal custody, in violation of 18 U.S.C. § 751(a). (Indictment, Feb. 5, 2020, Docket No. 9.)

## II. PROCEDURAL HISTORY

Martin filed a Motion to Suppress Electronic Surveillance Evidence (the recorded call) and a Motion to Suppress Search and Seizure Evidence obtained or derived from the tracking and search warrants (Martin, the firearm, the cell phone, and location and call data associated with the phone). (Mot. Suppress Electronic Surveillance Evidence at 1, Sept. 16, 2020, Docket No. 39; Mot. Suppress Search & Seizure Evidence at 1–2, Sept. 16, 2020, Docket No. 40.) On November 16, 2020, the Magistrate Judge held a hearing regarding the motions. (Minute Entry, Nov. 16, 2020, Docket No. 48.)

On January 4, 2021, the Magistrate Judge issued an R&R addressing the Motions. (R&R, Jan. 4, 2021, Docket No. 59.) She first recommended denying the Motion to Suppress Electronic Surveillance Evidence as moot, given that the United States represented that it would not be using the recorded call for its case in chief as to the

---

[1] The two warrants in dispute here—Ex. 1 and Ex. 3—were offered into evidence as exhibits at the motion hearing.
[2] *See supra* note 1.

escape charge, but to do so without prejudice, in case the United States sought to use the recording as impeachment evidence.[3] (*Id.* at 9–11.)

The Magistrate Judge then recommended denying the Motion to Suppress Search and Seizure Evidence, after finding that (1) the tracking warrant was supported by probable cause or, in the alternative, because evidence revealed by monitoring the cell phone was excepted from the exclusionary rule, (*id.* at 19–22); and (2) the search warrant was supported by probable cause or, in the alternative, because evidence discovered during the search of the Mounds View residence was likewise excepted from the exclusionary rule,[4] *(id.* at 28–29.)

Martin objects to the above findings and recommendations, asserting that neither Motion should be denied. (Obj., Jan. 19, 2021, Docket No. 63.)

---

[3] The Magistrate Judge did not reach the issue of whether the informant had consented to the recording of the call, as the issue was not fully raised as a basis for suppressing the warrants in the briefs. (R&R at 13). If she were to, she noted that the hearing would have to be reopened to permit testimony on this point. (*Id.* n.4.)

[4] With respect to the seizure of Martin's person within the residence, the Magistrate Judge stated that because Martin had not put forward any argument concerning this issue, she understood Martin to not be seeking suppression of his person. (*See* R&R at 31–32.) Martin does not challenge this finding. With respect to the firearm, the Magistrate also found that Martin had no expectation of privacy in the location within the residence where it was found and, thus, additionally recommended denial of the Search and Seizure Motion with respect to the firearm for lack of standing. (*Id.* at 30–31.) Martin challenges this recommendation, which the Court will decline to adopt for reasons explained below. *See infra* note 9.

**DISCUSSION**

**I. STANDARD OF REVIEW**

After an R&R is filed by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). For a dispositive matter such as a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(1), (3); *see also* 28 U.S.C. § 636(b)(1). "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

**II. MOTION TO SUPPRESS ELECTRONIC SURVEILLANCE EVIDENCE**

Under federal law, as relevant here, "no part of the contents of [any intercepted wire or oral communication] and no evidence derived therefrom may be received in evidence," 18 U.S.C. § 2515, unless "a person acting under color of law . . . is a party to the communication or one of the parties to the communication has given prior consent to such interception," *Id.* § 2511(2)(c).

Here, a phone call was placed by an informant to Martin and the call was recorded by law enforcement, as the interview room in which the call was made was equipped with an audio recording device, which was recording at the time. The United States has averred that the informant did not necessarily know that the call was being recorded and

has not yet provided any evidence to demonstrate that the informant gave consent to have the call recorded.  Martin certainly did not consent.  And no law enforcement officer was party to the call.

As such, it seems that the contents of the recorded call should be excluded as evidence.  However, the United States has represented that it will not be using the recorded call in its case in chief, for the contents of the call are not relevant with respect to establishing that Martin had allegedly escaped from federal custody.  In such situations, motions to suppress evidence are considered moot because there is no need to suppress information that will never actually be introduced as evidence.  *See, e.g.*, *United States v. McConnell*, No. 13-273, 2017 WL 396538, at *4 (D. Minn. Jan. 30, 2017) (parties agreeing that motion was moot); *United States v. Tenerelli*, No. 07-1941, 2008 WL 420018, at *1–2 (D. Minn. Feb. 13, 2008) (adopting report and recommendation finding motion to be moot after the United States represented that it did not intend to use the information in its case in chief), *aff'd*, 614 F.3d 764 (8th Cir. 2010).

Yet, as the Magistrate Judge noted, simply because the United States will not be using the recorded call for its case in chief does not definitively rule out that it could still seek to use the recording for impeachment purposes at trial, even if unlikely.  Since the question of whether the informant consented to the recording was left unresolved, as it was not fully briefed or argued before the Magistrate Judge, no final decision concerning the admissibility of the recording can be made at this point.  Thus, the Court will deny the

Motion to Suppress Electronic Surveillance as moot, but will do so without prejudice, which will allow Martin to object later if the United States seeks to use the recording at trial.

### III. MOTION TO SUPPRESS SEARCH AND SEIZURE EVIDENCE

The recorded call is significant, however, when considering Martin's Motion to Suppress Search and Seizure Evidence, as law enforcement officers relied upon the contents of the call to help demonstrate sufficient probable cause when applying for the tracking and search warrants. Specifically, in the affidavit submitted in support of the tracking warrant, Minneapolis Police Sergeant John Biederman stated that he "knows MARTIN, has spoken with him on the phone in the past, and has reviewed recorded calls made by MARTIN [and] listened to this recorded call. This Sergeant believes that the person on the call placed by the informant was made to MARTIN based on the voice on the phone." (Ex. 1 at 4.) Similarly, in the affidavit submitted in support of the search warrant, Biederman stated that he is "familiar with MARTIN and have spoken with him face to face and over the phone several times. I have also reviewed historical recorded calls that MARTIN has been a party to. I am familiar with his voice." (Ex. 3 at 2.)

As discussed above, the question of whether the informant consented to the recording of the call remains unresolved and, as a result, so too is the question of whether the interception of the call was lawful. Thus, Martin argues that Biederman's statements should not be considered when determining whether the warrant applications

demonstrate sufficient probable cause.  The Court agrees and, accordingly, will disregard Biederman's statements when considering each warrant.  *See United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004) (stating that the sufficiency of a warrant affidavit which contains information unlawfully obtained is evaluated after deleting that information).

### A. Tracking Warrant

Martin argues that, absent Biederman's statements, the tracking warrant affidavit lacks sufficient probable cause to connect Martin to the phone that was then tracked.  As such, Martin asserts that any location monitoring data collected pursuant to the warrant should be suppressed.

A search warrant must be based upon a finding by a judicial officer that there is probable cause to believe that evidence, instrumentalities of a crime, or a person may be found in the place to be searched.  *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe that there is a fair probability" that the evidence, instrumentalities, or person "would be found in a particular place."  *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Probable cause is a fluid concept, *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010), which requires reading warrant applications and affidavits with common sense and not in a grudging, hyper technical fashion, *Walden*, 156 F.3d at 870.

"Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference." *Id.*  The duty of a reviewing court is to ensure that the judicial officer issuing the search warrant had a substantial basis for concluding that "a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (quotation omitted).

After excising Biederman's statements concerning the recorded call, the facts put forward to demonstrate probable cause of a nexus between Martin's alleged escape from custody and the phone sought to be tracked to acquire his location are these:

> Jimmy MARTIN [] escaped from custody on December 5, 2019. He has a federal arrest warrant (warrant number 204112050291A).
>
> Within the last 72 hours, a phone call was placed to Jimmy MARTIN at [XXX-XXX]-4922 in the presence of law enforcement.  This call was placed by a confidential informant who was able to provide other information concerning MARTIN that was able to be verified by law enforcement.
>
> Your affiant believes Jimmy MARTIN is in control of [XXX-XXX]-4922.

(Ex. 1 at 3–4.)

Reading the affidavit in a commonsense manner, the informant knew how to reach Martin, by dialing the 4922 number, and then talked to him, which law enforcement officers heard over speakerphone.  The informant also provided the officers additional information regarding Martin, which was independently corroborated by them, and, as such, demonstrated that the informant was reliable, as when identifying Martin on the

other end of the call. *See United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (explaining that informant reliability can be established through independent corroboration). Moreover, the informant provided this information to the officers in person, which allowed them to more conclusively assess the informant's veracity. *See id.*

The Court finds that these facts, in total, are sufficient to support a finding of probable cause. *See, e.g.*, *United States v. Brown*, 499 F.3d 817, 821 (8th Cir. 2007) (stating that, while more elaboration on an informant's reliability would have been preferable, it was not essential to support a finding of probable cause). The Court also finds that the judicial officer issuing the tracking warrant had a substantial basis for concluding that a search would uncover evidence of wrongdoing, namely Martin's alleged escape from custody. *See Gates*, 462 U.S. at 236.

Furthermore, the location data is nevertheless admissible under the good-faith exception. Generally, evidence obtained by means of an illegal search is subject to the exclusionary rule, which demands that such evidence be suppressed to deter unlawful police conduct. *See generally United States v. Leon*, 468 U.S. 897, 906–13 (1984) (exploring the history and application of the rule). However, when an officer acting with objective good faith has relied on the validity of a search warrant and acted within its scope, most often there is no police illegality and nothing to deter, and evidence derived from the search should not be suppressed, even if the warrant is subsequently invalidated. *Id.* at 920–22.

Of course, a supporting affidavit cannot be "so lacking" in indicia of probable cause as to render official belief in its existence "entirely unreasonable." *United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012) (quotation omitted). Here, however, the affidavit stated that the informant dialed the 4922 number in front of law enforcement officers and confirmed it was Martin on the line, and then the informant's reliability and veracity were corroborated by officers present at the time the call was made. As such, the Court finds that the affidavit was not so lacking in indicia of probable cause that it would have been unreasonable to believe that the requisite nexus between Martin and the phone existed and, thus, that the tracking warrant was valid.

In sum, even when disregarding Biederman's statements, the affidavit demonstrated sufficient probable cause or, alternatively, the affidavit demonstrated sufficient indicia of probable cause for the good-faith exception to apply. Either way, the Court finds that any location monitoring data derived from the tracking warrant should not be suppressed and, accordingly, the Court will deny Martin's Motion to Suppress Search and Seizure Evidence in this regard.

### B. Search Warrant

In the affidavit supporting the warrant to search the Mounds View residence for Martin, and for firearms and phones said to either constitute evidence that a crime was committed, were the means to commit a crime, or constituted criminal possession, the following facts remain after excising Biederman's statements:

-11-

In December of 2019, Jimmy Leeartis MARTIN [] escaped from custody. A federal arrest warrant was issued for MARTIN. The warrant number for this is 204112050291A.

On December 31, 2019, MB was shot and murdered in Minneapolis, Minnesota after she was abducted in the city of Maple Grove, Minnesota. Law enforcement discovered duct tape on MB. Finger prints of CB was found on the duct tape. CB has been taken into custody and is currently charged in Hennepin County with the murder of MB.

Also on December 31, 2019, a male, JM was shot in north Minneapolis with a .45 caliber firearm. JM is the boyfriend of MB.

Firearms have not been recovered in relation to these cases.

Within the last 72 hours, a call was placed by an informant to [XXX-XXX]-4922. The informant stated that they had called MARTIN at this number.

This informant provided information concerning the December 31, 2019 incident that law enforcement could verify. This informant stated that MARTIN was a person who fired a firearm during the course of CB's[5] [sic] murder.

A court order was obtained from a Hennepin County District Judg on January 9, 2020, permitting the electronic tracking of the cell phone assigned number [XXX-XXX]-4922. This cell phone was tracked to the area of [XXXX] Quincy Street in Mounds View (Ramsey County), Minnesota. This building is a four-plex.

---

[5] Martin challenges whether inserting "CB" here instead of "MB" was a mere typographical error. However, given that MB was murdered, and that CB was taken into custody and charged for this murder, the Court finds that common sense indicates that this was a typographical error and that Biederman meant "during the course of MB's murder."

> On, January 4, 2020, a domestic assault occurred in the building in apartment four. [KD] was listed in the report. In the body of the report an officer noted that they spoke with [KD] who lived across the hall from apartment four. Apartment three is across the hall from unit four in [XXXX] Quincy Street.
>
> In Hennepin County Jail records, where MARTIN has been an in-mate, show that [KD] is a sibling of MARTIN. In 2012, she visited him in Hennepin County Jail at least three times.
>
> Law enforcement would like to enter the address and search for [KD][6] [sic] and the items listed on page one of this application.

(Ex. 3 at 1–3.)

Martin's first argument is that, without the location monitoring data, there would be no probable cause to search the residence; however, as discussed above, this data is admissible, so this argument in unavailing. Next, Martin argues that, even with the location data, the facts in the affidavit are insufficient to support a finding of probable cause to search the apartment for Martin or evidence of criminal activity. The Court disagrees.

---

[6] Again, Martin challenges whether inserting "KD" here instead of "Martin" was a mere typographical error. However, given that Biederman was applying for a search warrant in hopes of apprehending Martin, the Court finds that common sense indicates that this was another typographical error and that Biederman meant "enter the address and search for Martin."

With respect to Martin's person, the Court finds that it could fairly be inferred that Martin was at the residence named in the affidavit, as one-day old location data[7] had narrowed down his whereabouts to the four-plex where his sibling lived in apartment three, and that being there would constitute criminal activity, as he was an escapee from custody.  Moreover, when executing an arrest warrant at a third person's home, as occurred here, if arresting officers have a reasonable belief that the suspect is present at the time the warrant is executed, then police may enter the residence to make the arrest. *See United States v. Glover*, 746 F.3d 369, 373 (8th Cir. 2014).  Given that the Court finds that there was probable cause to believe that Martin was in the residence, it was reasonable to believe he was there too.  Accordingly, the Court will deny Martin's Motion in this regard.

With respect to whether the firearm[8] could fairly be inferred to be at the residence, the affidavit stated that the informant provided information concerning two

---

[7] The facts tying Martin to the phone traced to the residence are nearly identical to those analyzed above with respect to the tracking warrant: the informant said that they called Martin at the 4922 number within the last 72 hours, and other information provided by the informant was corroborated by law enforcement.  As such, the Court incorporates its earlier analysis here: the reliability of the informant's information was established as was its veracity, so it could be fairly inferred that the relevant phone was in Martin's possession.  Moreover, the location data showing the phone to be at the four-plex provides additional support for a finding of probable cause that Martin was at the residence.

[8] The United States represents that it does not intend to use the seized cell phone in its case in chief.  As such, the Court will only consider whether the firearm should be suppressed.  However, given that the phone associated with the 4922 number was

interrelated shooting incidents on December 31, 2019, information that was then verified by law enforcement officers. It also stated that the informant said that Martin had discharged a firearm during one incident, and that no firearms related to the incidents had yet been found. Finally, the affidavit set out that the incidents occurred ten days prior to the warrant application, and that Martin had been located at his sibling's four-plex one day before the warrant issued.

When considering these facts, in total, the Court finds that they were sufficient to support a finding of probable cause, as a reasonable person could have believed that there was a fair probability that the firearm would be found in the residence at that time. Furthermore, the Court finds that affidavit was not so lacking in indicia of probable cause that it would have been unreasonable to believe that the requisite nexus between Martin and the firearm existed and, thus, that the search warrant was valid. As such, the firearm is nevertheless admissible under the good-faith exception. Accordingly, the Court will deny Martin's Motion in this regard.

In sum, the Court will overrule Martin's objections, adopt the R&R as modified,[9] deny the Motion to Suppress Electronic Surveillance as moot without prejudice, and deny the Motion to Suppress Search and Seizure Evidence.

---

tracked to the residence, the Court notes that it could most likely be fairly inferred that the phone was there as well.

[9] The Magistrate Judge also recommended denial of the Search and Seizure Motion for lack of standing, as she found that Martin had no expectation of privacy in the firearm or where it was found. (R&R at 30–31.) However, the firearm was found under a mattress

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Martin's Objection to the Report and Recommendation [Docket No. 63] is **OVERRULED**;

2. The Magistrate Judge's January 4, 2021 Report and Recommendation [Docket No. 59] is **ADOPTED as modified**;

    a. The Court adopts the Magistrate Judge's recommendations except with respect to Martin's standing to seek suppression of the firearm.

3. Martin's Motion to Suppress Electronic Surveillance Evidence [Docket No. 39] is **DENIED as moot without prejudice**;

4. Martin's Motion to Suppress Search and Seizure Evidence [Docket No. 40] is **DENIED.**

DATED: March 4, 2021  
at Minneapolis, Minnesota.

                                                   JOHN R. TUNHEIM  
                                                   Chief Judge  
                                          United States District Court

---

in the bedroom where Martin was an overnight guest. As such, the Court finds that Martin had a reasonable expectation of privacy in the room, including under the mattress upon which he presumably slept. *See Minnesota v. Olson*, 495 U.S. 91, 98–100 (1990). Accordingly, while the Court adopts the remainder of the Magistrate Judge's recommendations, it declines to adopt her recommendation concerning standing and, thus, adopts the R&R as so modified.